UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD CALDERON, | ) | No. CV 08-5269-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Richard Calderon filed a complaint on August 14, 2008, seeking review of the Commissioner's decision denying his applications for disability benefits. On December 9, 2008, the Commissioner answered the complaint, and the parties filed a joint stipulation on February 11, 2009.

**BACKGROUND**

**I**

On December 7, 2004, plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of

the Act, claiming an inability to work since December 3, 2004, due to HIV infection, uncontrolled insulin-dependent diabetes, and memory loss.  Certified Administrative Record ("A.R.") 16, 66-70, 285-87. The plaintiff's applications were initially denied on April 27, 2005, and were denied again on June 24, 2005, following reconsideration. A.R. 52-65.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Edward C. Graham ("the ALJ") on January 25, 2007.  A.R. 50-51, 296-312.  On January 31, 2007, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 13-25.  The plaintiff appealed this decision to the Appeals Council, which denied review on June 18, 2008.  A.R. 4-11.

**II**

The plaintiff, who was born on March 1, 1957, is currently 52 years old.  A.R. 66, 285, 299.  He completed two years of college, and previously worked as a bus driver, dispatcher, and ticket agent/tour guide.  A.R. 76-77, 80, 83-84, 90-97, 121, 126, 299-301.

**A.   Physical Complaints:**

The plaintiff was involved in a serious automobile accident in 1978, and broke several bones and suffered a cerebral contusion.  A.R. 246-272.  Since January 24, 2003, plaintiff has received medical treatment at Los Angeles County-USC Medical Center ("County-USC"), where he was diagnosed with AIDS and insulin-dependent diabetes mellitus, among other conditions.  A.R. 152-218, 278.  On March 8, 2004, plaintiff's diabetes was uncontrolled, A.R. 175, but by September 10, 2004, he was doing well.  A.R. 168.  On January 7, 2005, plaintiff's diabetes was again uncontrolled, but his AIDS was stable.

A.R. 162.  On March 3, 2005, Jan Geisler, M.D., opined plaintiff can occasionally lift and/or carry up to 50 pounds, frequently lift and/or carry up to 10 pounds, stand and walk for 4 hours in an 8-hour day, and sit for an unlimited amount of time.  A.R. 132-33.

On March 28, 2005, nonexamining physician S.A. Brodsky, M.D., opined plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 3 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl, and can never climb ladders, ropes, and scaffolds.  A.R. 135-44.  On April 21, 2005, Dr. Brodsky reaffirmed his prior assessment.  A.R. 243.

On April 9, 2005, Rocely Ella-Tamayo, M.D., an internist, examined plaintiff, diagnosed him as having insulin-dependent diabetes mellitus and an HIV infection, and found plaintiff has no significant functional impairments.  A.R. 219-25.

**B.   Mental Complaints:**

On March 29, 2005, Romualdo R. Rodriguez, M.D., a psychiatrist, examined plaintiff, and determined plaintiff had a Global Assessment of Functioning ("GAF") of 70.[1]  A.R. 144-49.  Dr. Rodriguez also

---

[1]  A GAF of 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

3

1  opined plaintiff has no psychiatric condition and no functional
2  limitations from a psychiatric standpoint.  A.R. 149.

4       On May 18, 2005, Brian Betz, Ph.D., a clinical neuropsychologist,
5  examined plaintiff and performed psychological testing, noting:

>     Overall, [plaintiff] showed borderline to mild impairment in
>     the areas of word and name finding, verbal list learning and
>     recall (i.e. verbal memory), visual memory, dominant hand
>     motor speed and dexterity, complex sustained attention,
>     information processing speed, and graphomotor speed.  He had
>     intact performance in the areas of gross cognitive
>     functioning, premorbid intellectual functioning, vocabulary
>     range, verbal fluency, immediate and delayed episodic verbal
>     memory, non-dominant hand motor speed and dexterity, basic
>     attention, and one area of complex attention.  He has
>     variable levels of functioning in verbal memory as well as
>     in attention and processing speed.

A.R. 283.  Dr. Betz concluded plaintiff's "observed deficits are due to a combination of his prior traumatic brain injury and the neurocognitive sequelae of his HIV infection[,]" and recommended plaintiff have a psychiatric assessment for depression and use a planning calendar and organizer/reminder system to aid his memory. Id.

On January 19, 2007, Carla Back-Madruga, Ph.D., also conducted neuropsychological testing of plaintiff, which revealed moderate

4

decline in visual memory, verbal memory, language skills, sustained attention, information processing speed, paper and pencil constructional skills, non-dominant hand motor speed and dexterity as well as mild-to-moderate deficits on executive testing, moderate depression, and mild anxiety. A.R. 278. Dr. Back-Madruga opined plaintiff meets the criteria for mild dementia. Id.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Sam v. Astrue, 550 F.3d 808, 809 (9th Cir. 2008) (per curiam); Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir. 2008). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Vasquez, 547 F.3d at 1104.

The claimant is "disabled" for the purpose of receiving benefits

under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since his alleged onset date, December 3, 2004. (Step One). The ALJ then

found plaintiff has the severe impairments of diabetes, HIV infection and memory impairment (Step Two);[2] however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff cannot perform his past relevant work. (Step Four). Finally, the ALJ determined plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

## IV

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff has the RFC to "lift and carry 50 pounds occasionally and 25 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and he is mentally limited to unskilled work." A.R. 19. The plaintiff, however, contends the ALJ's RFC finding and ultimate decision are not supported by substantial evidence because the ALJ failed to properly assess his impairments and erroneously determined he was not a credible witness.

**A. Physical Impairment:**

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and

---

[2] In making this Step Two finding, the ALJ also found plaintiff has: "a mild restriction of activities of daily living; no difficulties with social functioning; and moderate difficulties maintaining concentration, persistence, or pace. There are no episodes of decompensation." A.R. 21.

1  has a greater opportunity to know and observe the patient as an
2  individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);
3  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
4  1999).  Therefore, the ALJ must provide clear and convincing reasons
5  for rejecting the uncontroverted opinion of a treating physician, Ryan
6  v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick,
7  157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is
8  contradicted by another doctor, the ALJ may not reject this opinion
9  without providing 'specific and legitimate reasons' supported by
10 substantial evidence in the record." Reddick, 157 F.3d at 725;
11 Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  On the
12 other hand, the ALJ "may reject the opinion of a nonexamining
13 physician by reference to specific evidence in the medical record."
14 Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).

16      Treating physician Dr. Geisler opined plaintiff can occasionally
17 lift and/or carry up to 50 pounds, frequently lift and/or carry up to
18 10 pounds, stand and walk for 4 hours in an 8-hour day, and sit for an
19 unlimited amount of time.  A.R. 132-33.  However, Dr. Brodsky a non-
20 examining physician, apparently based on plaintiff's medical records
21 from County-USC, opined plaintiff can occasionally lift and/or carry
22 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk
23 for 3 hours in an 8-hour workday, sit for about 6 hours in an 8-hour
24 workday, occasionally climb ramp/stairs, balance, stoop, kneel,
25 crouch, and crawl, and can never climb ladders, ropes, and scaffolds.
26 A.R. 135-44.  Although Dr. Brodsky's opinions are different than Dr.
27 Geisler's, both Drs. Geisler and Brodsky share the opinion that
28 //

9

plaintiff can perform sedentary work.[3]

The ALJ rejected the portion of Dr. Geisler's opinion finding plaintiff could frequently lift no more than 10 pounds and Dr. Brodksy's opinions. A.R. 22. Assuming *arguendo* the ALJ erred in rejecting these opinions without proper explanation, such error was harmless since vocational expert Sandra Schneider testified that plaintiff could perform a couple of jobs in the national economy, if limited to sedentary work with moderate limitations in understanding and remembering tasks, sustaining concentration and persistence, interacting socially with the general public, and adapting to workplace changes. Specifically, Ms. Schneider opined plaintiff could perform:  table work (Dictionary of Occupational Titles ("DOT")[4] no. 739.687-182), with 5,800 jobs available locally and 148,000 jobs available nationally; and an order clerk (DOT no. 209.567-014), with 11,000 jobs available locally and 350,000 jobs available nationally.[5]

---

[3]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[4]  The DOT is the Commissioner's primary source of reliable vocational information. Johnson v. Shalala, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995); Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

[5]  The DOT describes the table worker and order clerk positions as sedentary work with a specific vocational preparation of two, U.S. Dep't of Labor, Dictionary of Occupational Titles, 180, 774 (4th ed. 1991); see also U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the

A.R. 310-11; see Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). Thus, any error by the ALJ in failing to properly explain his rejection of Dr. Geisler's and Dr. Brodksy's opinions regarding plaintiff's ability to lift is harmless error.

### B. Mental Impairment:

"[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician[,]" Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Ryan, 528 F.3d at 1198.

Examining psychologist Dr. Betz found that, on testing, plaintiff showed borderline-to-mild verbal and visual memory impairment and impairments in complex sustained attention and information processing speed, A.R. 283, and recommended plaintiff use a planning calendar and organizer/reminder system to aid his memory. Id. Dr. Back-Madruga found a moderate decline in verbal and visual memory, language skills, sustained attention and information processing speed, as well as

---

Revised Dictionary of Occupational Titles, 203, 335 (1993), which "corresponds precisely to the definition of unskilled work embodied in [Social Security Administration] regulations." Terry, 903 F.2d at 1276.

11

1  moderate depression and mild anxiety.  A.R. 278.  The ALJ relied on
2  the opinions of Drs. Betz and Back-Madruga in finding plaintiff "is
3  mentally limited to unskilled work" with "a mild restriction of
4  activities of daily living; no difficulties with social functioning;
5  . . . moderate difficulties maintaining concentration, persistence or
6  pace[; and] . . . no episodes of decompensation."  A.R. 21.  Thus,
7  contrary to plaintiff's claim, the ALJ appropriately considered the
8  opinions of Drs. Betz and Back-Madruga, neither of whom suggested any
9  greater limitations than the ALJ found, and the opinions of these
10 psychologists provide substantial evidence to support the ALJ's
11 assessment of plaintiff's mental impairment.  Orn v. Astrue, 495 F.3d
12 625, 632 (9th Cir. 2007); Tonapetyan v. Halter, 242 F.3d 1144, 1149
13 (9th Cir. 2001).

**C.  Credibility**:

The plaintiff testified at the administrative hearing that he has problems with his short-term and long-term memory and his diabetes, he has pain in both his ankles, and he has been told not to drive.  A.R. 301-06.  Because of his memory problems, plaintiff testified he gets lost when he takes public transportation.  A.R. 302.  The plaintiff also stated he has problems maintaining his balance, and uses a walker and/or a cane.  A.R. 303-04.  Finally, plaintiff testified he can regularly lift up to 25 pounds, stand for approximately 30 minutes at a time and about 3-4 hours in an eight-hour day, he has no problem sitting, and he can walk about a block before having to stop and rest.  A.R. 306, 309.

Once a claimant has presented objective evidence he suffers from

an impairment that could cause pain or other nonexertional limitations,[6] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he "'must provide specific, cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Orn, 495 F.3d at 635. Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan, 169 F.3d at 599; Carmickle, 533 F.3d at 1160.

    The ALJ found plaintiff's statements concerning the "intensity, persistence and limiting effects of [his] symptoms are not entirely credible" because they "are not consistent with [plaintiff's] activities of daily living, which include caring for household chores, doing yard and gardening work, cooking, going to the store, running errands, driving his own automobile, and managing his own finances." A.R. 23 (citation omitted). Additionally, plaintiff "told Dr. Betz that he has a current driver's license and can drive a car independently and is able to use public transportation independently

---

[6] "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

13

and without difficulty." A.R. 23.

Here, the ALJ's adverse credibility findings are supported by substantial evidence in the record. See A.R. 98-105, 146, 278, 281, 302. Thus, plaintiff's "ability to perform such [daily] activities may be seen as inconsistent with the presence of a condition which would preclude all work activity."[7] Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990); see also Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ properly rejected claimant's testimony because she led "an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments."); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ properly rejected claimant's testimony because she "has normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances."); Burch, 400 F.3d at 680 ("[T]he ALJ articulated adequate reasons for partially rejecting [the claimant's] pain testimony[,]" including that claimant's daily activities show "she is quite functional."); Thomas, 278 F.3d at 959 (claimant's daily activities, including cooking, laundry, washing dishes, and shopping, support negative credibility finding).

//

---

[7] On the other hand, plaintiff testified at the administrative hearing that he had not driven since "[p]robably in the summer of last year" because "the doctor asked me not to drive anymore[,]" A.R. 301-02, and on May 18, 2005, Dr. Betz noted plaintiff "has a current driver's license and can drive a car independently, but tends to use public transportation as he sometimes gets lost while driving." A.R. 281. As there is no inherent inconsistency in these two statements, the Court does not rely on them in affirming the ALJ's adverse credibility determination.

1    The ALJ also found plaintiff's "complaints and alleged
2 limitations are not consistent with his treatment" since:

4    There is no evidence of severe disuse muscle atrophy that
5    would be compatible with the [plaintiff's] alleged
6    inactivity and inability to function. [¶] . . . There is
7    no evidence of emergency room or hospitalization for HIV or
8    diabetes since the alleged onset of disability. The
9    [plaintiff] indicates that he uses a walker and cane, but
10   neither was prescribed by a doctor nor are they medically
11   indicated based on the objective findings and treatment
12   records. There is no evidence of mental health treatment or
13   use of psychiatric medications. It is reasonable to assume
14   that if the [plaintiff] were experiencing the disabling
15   problems alleged, he would have received more aggressive
16   treatment.

18 A.R. 23. Contradiction with the medical record is another basis for
19 rejecting a claimant's subjective testimony. Carmickle v. Comm'r,
20 Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see also
21 Stubbs-Danielson, 539 F.3d at 1175 (ALJ properly rejected claimant's
22 testimony because her "allegations as to the intensity, persistence
23 and limiting effects of her symptoms are disproportionate and not
24 supported by the objective medical findings nor any other
25 corroborating evidence."); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th
26 Cir. 1999) (ALJ offered clear and convincing reasons for rejecting
27 claimant's testimony of excess pain and fatigue as inconsistent with
28 the medical record when claimant "had walked slowly and used a cane at

15

the hearing, although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk."); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (affirming ALJ's rejection of claimant's excess pain testimony based, in part, on claimant's lack of muscular atrophy or any other physical signs of inactivity). Thus, the Court finds the ALJ's reasons for his adverse credibility determination were clear and convincing, sufficiently specific, and supported by substantial evidence. Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003); Burch, 400 F.3d at 681.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  May 12, 2009                    /S/ ROSALYN M. CHAPMAN
                                       ROSALYN M. CHAPMAN
                                       UNITED STATES MAGISTRATE JUDGE

R&R-MDO\08-5269.mdo
5/12/09